UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>BENJAMIN MENSAH,<br><br>                Defendant. | Case No. 2:23-cr-00636-FLA<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [DKT. 35]** |

1

# RULING

Before the court is defendant Benjamin Mensah's ("defendant") Motion to Suppress Evidence ("Motion"). Dkt. 35. Plaintiff the United States of America ("government") opposes the motion. Dkt. 39 ("Opp'n"). On February 23, 2024, the court held an evidentiary hearing on the Motion.

For the reasons set forth below, the court GRANTS the Motion.

# BACKGROUND

### A. March 5, 2023 Seizure of Shipment and Subsequent Investigation

On March 3, 2023, United States Customs and Border Patrol agents at Los Angeles International Airport placed a hold on a cargo shipment destined for Onehunga, New Zealand ("Drug Shipment"). Criminal Complaint, Dkt. 1 at 5.[1] A search of the Drug Shipment revealed 20 vacuum-sealed bags containing approximately 264.5 kilograms of pure methamphetamine. *Id.* at 6.

The government thereafter opened an investigation into the source of the Drug Shipment and discovered information linking defendant to the Drug Shipment, including that: 1) the shipping label on the Drug Shipment was created by Preferred Shipping Incorporated, an authorized reseller of DHL services; 2) an Internet Protocol ("IP") address ending in .216 (".216 IP Address") had repeatedly tracked the Drug Shipment on DHL's website; 3) the .216 IP Address had been used to access Preferred Shipping Incorporated's website on February 27, 2023; 4) the .216 IP Address had been used to access repeatedly an e-mail account listed on the shipping label ("Gmail Account"); 5) the Gmail Account communicated with DHL customer service representatives on 14 occasions between February 27, 2023 and March 24, 2023; 6) defendant was the listed subscriber for the .216 IP Address; 7) the subscriber address for the .216 IP address matched defendant's home address; and 8) defendant's birth

---

[1] The court cites documents by the page numbers added by the court's CM/ECF system, rather than any page numbers that appear within the documents natively.

2

date matched the birth date listed for the account holder of the Gmail account. *Id.* at 6-8.

### B. State Search Warrant

While the government's investigation was underway, the Los Angeles Police Department ("LAPD") obtained a state search warrant to search defendant's home for firearms and ammunition based on unrelated reports that defendant had made criminal threats towards his housemate, in violation of California Penal Code § 422(a). Opp'n at 11-12. On October 18, 2023, while executing the state search warrant, LAPD officers found a shotgun, an AR-15 firearm, and an extended magazine containing 22 rounds of 9mm Luger caliber ammunition. *Id.* at 12; Dkt. 39-1, Ex. C at 10.

### C. Section 922(g)(1) Complaint and Arrest Warrant

On October 23, 2023, shortly after defendant was arrested by LAPD (but, ultimately released) on the criminal threats charge, the government charged defendant with being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1) ("§ 922(g)(1)") by way of a criminal complaint. Dkt. 39-1, Ex. C. The complaint noted LAPD's execution of the state search warrant resulted in discovery of firearms and ammunition at defendant's home, and that a review of defendant's criminal history records revealed that defendant "[was] a convicted felon" and "ha[d] previously been convicted of [two] felony crimes" in the Superior Court of Gwinnett County, Georgia. *Id.* at 9-11. The government also applied for and obtained a warrant for defendant's arrest based on the same allegations ("the § 922(g)(1) Arrest Warrant"). *Id.* at 4; Opp'n at 13.

Also on October 23, 2023, the government filed a separate application for a search warrant to search defendant's home for evidence of drug trafficking based on information discovered during its investigation of the Drug Shipment. Dkt. 39-1, Ex. B. In support of the application, the government detailed its investigation into the Drug Shipment and information connecting defendant to the Drug Shipment. *Id.*

On October 24, 2023, Homeland Security Investigations ("HSI") agents

3

1  attempted to execute both the search and arrest warrants at defendant's residence.
2  Opp'n at 14.  Before HSI agents could execute either, defendant fled his home.  *Id.*
3  Defendant later spoke with a HSI Crisis Negotiator, and informed the negotiator he
4  would not be returning to his residence or surrendering to authorities.  *Id.*  HSI agents
5  proceeded with the search of defendant's residence.  *Id.*  During the search, HSI
6  agents seized a DHL shipping label to the same address in Onehunga, New Zealand,
7  to which the Drug Shipment was addressed.  Opp'n at 14.  The shipping label listed
8  the sender as "Benjamin Mensah" and "Jackson Mensah Holdings Incorporated."  *Id.*
9       On October 26, 2023, HSI agents located defendant at a restaurant in
10 Inglewood, California, and arrested him pursuant to the § 922(g)(1) Arrest Warrant.
11 *Id.*  Incident to defendant's arrest, HSI agents seized defendant's cellphone from his
12 person and conducted a post-arrest interview of defendant after defendant agreed to
13 waive his *Miranda* rights.  *Id.*, Dkt. 39-1, Ex. D.  The government, thereafter, applied
14 for and obtained a search warrant for the contents of defendant's cellphone.  Dkt. 39-
15 1, Ex. A.

### D. Dismissal of § 922(g)(1) Charge and Superseding Indictment

17      After a federal grand jury returned an indictment on the § 922(g)(1) charge, *see*
18 *United States v. Mensah*, Case No. 2:23-cr-00550-HDV, Dkt. 14 (C.D. Cal. Nov. 9,
19 2023), defendant's attorney contacted the government regarding purported
20 deficiencies with the pending § 922(g)(1) charge.  Opp'n at 15.  Specifically, counsel
21 argued that defendant's underlying Georgia felony convictions were insufficient to
22 form the basis of a § 922(g)(1) charge, because defendant had been exonerated under
23 Georgia's First Offender Act (O.C.G.A. § 42-8-60 *et seq.*, "First Offender Act"), and
24 thus, was never convicted.  Opp'n at 15.
25      On December 8, 2023, the government filed a federal criminal complaint in the
26 instant matter, charging defendant with conspiracy to distribute methamphetamine and
27 attempted exportation of methamphetamine.  *See* Dkt. 1.  On December 18, 2023, the
28 government voluntarily moved to dismiss the indictment charging defendant with a

4

violation of § 922(g)(1).  *United States v. Mensah*, Case No. 2:23-cr-00550-HDV, Dkt. 20.  On December 19, 2023, a grand jury returned an indictment in the instant matter, charging defendant with conspiracy to distribute methamphetamine and attempted exportation of methamphetamine, in violation of 21 U.S.C. §§ 846, 953(c), 963, 960(a)(1), and 960(b)(1)(H).  Dkt. 12.

### E.  Procedural Posture

On February 5, 2024, defendant filed the instant Motion, seeking suppression of evidence obtained as a result of his arrest and requesting a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) ("*Franks* hearing") to assess the veracity of the affidavit filed in support of the § 922(g)(1) Arrest Warrant.  Mot. at 13.  Upon finding defendant had made a preliminary showing of the existence of a false statement or omission that was material to the determination of probable cause in issuing the § 922(g)(1) Arrest Warrant, the court granted the request and held a *Franks* hearing on February 23, 2024.  Dkts. 44-45.

## DISCUSSION

### I.   Legal Standard

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  In general, searches and seizures are unreasonable and invalid unless based on probable cause and executed pursuant to a warrant.  *Missouri v. McNeely*, 569 U.S. 141, 148 (2013).  "Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime."  *United States v. Garza*, 980 F.2d 546, 550 (9th Cir. 1992).  Evidence derived from conduct violative of the Fourth Amendment is ordinarily tainted by the prior illegal conduct, and thus, inadmissible, subject to certain recognized exceptions. *United States v. Gorman*, 859 F.3d 706, 716 (9th Cir. 2017).

An evidentiary hearing pursuant to *Franks v. Delaware* allows a defendant to challenge the sufficiency of a warrant if he makes a "substantial preliminary showing" that law enforcement officers made a false statement or omission "knowingly and intentionally, or with reckless disregard for the truth," and that the statement or omission was "necessary to the finding of probable cause." 438 U.S. at 155–56 (1978). To prevail on a *Franks* challenge, the defendant must establish, by a preponderance of the evidence, that the affiant officer intentionally or recklessly made false statements or omissions that were material and necessary to the finding of probable cause. *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (citing *United States v. Martinez-Garcia*, 397 F.3d 1205, 1214-15 (9th Cir. 2005)). If a defendant satisfies both requirements, the "warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156.

## II.   Analysis

Defendant argues the affidavit filed in support of the § 922(g)(1) Arrest Warrant contained deliberate or reckless misrepresentations and omissions, because the government alleged defendant was a convicted felon, when in fact, defendant's guilt had not been adjudicated resulting in no final judgment of conviction, pursuant to the First Offender Act. Mot. at 13-15; Dkt. 39-1, Ex. C at 10-11.[2]

---

[2] Defendant seeks suppression of the following evidence as "fruit" of the § 922(g)(1) Arrest Warrant: 1) audio records and transcript of defendant's statements to investigators on October 26, 2023, following his arrest; 2) "perceptions, recollections and observations of the agents related to that taped statement"; 3) property and information seized during the execution of a search warrant on October 26, 2023; 4) a black iPhone 14 in defendant's possession at the time of arrest and all text messages, phone records, email messages, social media accounts, location information, and communications obtained; and 5) "any other evidence the court finds unlawfully obtained and the fruits thereof." Mot. at 1-2.

6

Defendant's status as a convicted felon is unquestionably material and necessary to the finding of probable cause in the § 922(g)(1) Arrest Warrant, as it is an element of the offense for which he was charged. Accordingly, the court analyzes whether the government's affidavit contained material misstatements or omissions, and if so, whether such misstatements or omissions were made intentionally or with reckless disregard for the truth.

### A. Material Misstatement or Omission

Defendant claims the following language, appearing on two documents produced to the government by the Superior Court of Gwinnett County, Georgia ("Georgia Documents") pertaining to two state law charges against defendant for terroristic threats and bail jumping, contradicts the government's contention that defendant was a "convicted felon." *See* Dkt. 35-1 at 3; Dkt. 35-2 at 5.

> **FIRST OFFENDER:** *Whereas the defendant has not previously been convicted of a felony nor taken advantage of the provisions of the First Offender Act ... this sentence is imposed under the provisions of the First Offender Act* (O.C.G.A. § 42-8-60). *No judgment of guilt is imposed in this sentence at this time and further proceedings are deferred.* Upon violation of any condition of probation, the Court may enter an adjudication of guilt and proceed to sentence defendant … Upon fulfillment of the terms and conditions of probation, or upon release of the defendant by the Court prior to the termination of the period hereof, the defendant shall stand discharged of the above offense(s) and shall be completely exonerated of guilt.

*Id.* ("First Offender Language") (emphasis added).

The government argues the affidavit does not contain any false statements because other language in the Georgia Documents reflects that defendant was in fact convicted of two felonies, and the First Offender Language is not controlling. Opp'n at 21-24. The language the government relies on states: "Disposition of counts: Felony. Guilty as charged" and "Final Disposition: Negotiated Plea, Felony

7

Sentence." *Id.* at 22; Dkt. 35-1 at 3; Dkt. 35-2 at 5. The court disagrees for the following reasons.

First, the government has not explained or provided authority as to why the language it relies on in the Georgia Documents prevails over the First Offender Language in the same documents, or how defendant was ineligible for relief under the First Offender Act. The government relies on *Coleman v. State* to argue that Georgia courts have held that where a sentencing form indicates that the "'disposition' of the charged offense is 'Guilty,'" that form "unambiguously shows that [the defendant] was not sentenced as a first offender." 833 S.E.2d 720, 722 (Ga. Ct. App. 2019); Opp'n at 22. *Coleman* does not sweep that broadly.

In *Coleman*, the defendant was convicted by a jury of making a false statement and sentenced to five years' probation and a fine. *Id.* at 721. The defendant later moved to terminate probation and for an order of exoneration pursuant to the First Offender Act. *Id.* The defendant alleged he had completed all statutory terms under the First Offender Act, that his probation should be terminated, and that he should be adjudged not guilty. *Id.* The defendant also argued the "sentencing order was ambiguous as to whether he was adjudicated guilty or sentenced as a first offender and that this ambiguity must be resolved in his favor." *Id.* The State disagreed and urged the court to uphold the conviction and sentence because the defendant had not been sentenced pursuant to the First Offender Act as "he was ineligible for such status at the time his sentence was entered." *Id.*

On appeal, the court held that the defendant was not entitled to relief under the First Offender Act because of a prior conviction, which his attorney conceded during the sentencing hearing "without prompting." *Id.* at 721-22. The court also held the sentencing form was not ambiguous. The form in *Coleman* stated, "[t]he Defendant is adjudged guilty *or* sentenced under First Offender/Conditional Discharge for the above-stated offense(s) …" *Id.* at 722 (emphasis in original). The court of appeal

further held "this sentence merely establishe[d] that Coleman was either being adjudged guilty or sentenced as a first offender, not both." *Id.*

*Coleman* is inapposite to the case at hand. The sentencing form in *Coleman* did not contain the First Offender Language present in the Georgia Documents. In addition, *Coleman* made clear that "consistent with Georgia law … when a defendant is sentenced as a first offender, 'there is no adjudication of guilt [and] there is no conviction.'" *Id.* The Georgia Documents here specifically state that defendant was being sentenced under the First Offender Act, such that "[n]o judgment of guilt [was] imposed in this sentence at this time and [that] further proceedings [were] deferred." Dkt. 35-1 at 3; Dkt. 35-2 at 5. The documents further state that only "[u]pon violation of [a] condition of probation, [may] the Court … enter an adjudication of guilt and proceed to sentence defendant … [and that] [u]pon fulfillment of the terms and conditions of probation, … the defendant shall stand discharged of the above offense(s) charged and shall be completely exonerated of guilt." *Id.*

The government's argument is further undermined by the statutory text of the First Offender Act, which states "[w]hen a defendant has not been previously convicted of a felony, the court may, *upon a guilty verdict or plea of guilty* … and before an adjudication of guilt, without entering a judgment of guilt … defer further proceedings[.]" O.C.G.A. § 42-8-60(a) (emphasis added). It is, therefore, reasonable to conclude the "Felony. Guilty as charged," and "Negotiated Plea, Felony Sentence," language in the Georgia Documents is at best a memorialization of defendant's pleas of guilty, as required by the First Offender Act before a court may withhold entry of a judgment of guilt and defer further proceedings.

The government next argues the First Offender Act does not apply to both of the charges because the statute states, "a defendant may not avail himself or herself of this article on more than one occasion." O.C.G.A. § 42-8-60(l). Therefore, the government argues, "even if one of defendant's convictions could have been subject to the First Offender Act … the second conviction could not also be exonerated by the

9

First Offender Act." Opp'n at 23. As above, the government has offered no authority for the proposition that a defendant is ineligible under Georgia law for relief under the First Offender Act where he is charged in two separate cases and pleads guilty on the same day to the charges in both cases, and has no prior convictions before entry of the two guilty pleas. *See* O.C.G.A. § 42-8-60(a) ("When a defendant has not been previously convicted of a felony, the court may … before an adjudication of guilt … defer further proceedings).

The Georgia Documents involve two separate cases alleging different felony crimes (Terroristic Threats in Criminal Action # 04-B-2290-8; and Bail Jumping in Criminal Action # 09-B-0783-8). Dkt. 35-1 at 3; Dkt. 35-2 at 5. The defendant entered guilty pleas in both cases to both charges on October 7, 2009. The Georgia Documents were filed simultaneously by the clerk of court on October 12, 2009, at 1:01 p.m. *Id*. The sentences in both cases were ordered to run concurrently with each other. *Id*. In short, there is no evidence one guilty plea and sentence preceded the other, even if, as the government alleges, the conduct underlying one charge predated that of the second. Opp'n at 23. Unlike *Coleman*, there is no evidence defendant had been previously convicted of a felony at the time he pleaded guilty to both charges so as to disqualify him from relief under the First Offender Act.

Finally, the government's reliance on allegedly unsatisfied technical requirements of the statute is insufficient to negate applicability of the First Offender Act. That the government does not have in its possession "any court record affirmatively stating that defendant was actually exonerated of the two felonies" is not dispositive. *See* Opp'n at 23 (citing O.C.G.A. § 42-8-60(h)(1) (providing "it shall be the duty of the clerk of court to enter on the criminal docket" specific language noting that the defendant has been completed exonerated)). The government selectively quotes, and mischaracterizes, the requirements of the First Offender Act, as the preceding sections impose upon other state entities a duty to provide notice to the clerk of court of a defendant's completion of probation. O.C.G.A. § 42-8-60(f). If

10

and when the clerk receives such notice, he is then required to enter such an order on the criminal docket. O.C.G.A. § 42-8-60(h). Thus, the absence of an order of exoneration does not disqualify defendant from First Offender status, as there is no evidence the clerk ever received such documents.[3]

Moreover, the government ignores that the First Offender Act dictates a defendant "shall be exonerated of guilt and shall stand discharged as a matter of law as soon as the defendant … [c]ompletes the terms of his or her probation[.]" O.C.G.A. § 42-8-60(e)(1). Defendant contends he successfully completed his term of probation in 2014, and the government has produced no evidence to the contrary. Mot. at 9, 15. Indeed, defendant provides evidence of an order of administrative dismissal of charges relating to an alleged probation violation in 2016, where defendant moved to dismiss said charges because his term of probation had already been completed in 2014. *See* Dkt. 35-2 at 8-11. The lack of exoneration records, without any counter evidence reflecting defendant did not successfully complete the term of his probation, therefore, cannot nullify the statutory presumption that defendant was exonerated "as a matter of law" upon completion of his term of probation in 2014.

Failure to include an "effective date of the defendant being exonerated of guilt and discharged as a matter of law," on the Georgia Documents is similarly insufficient to deprive defendant of his First Offender status. Opp'n at 22-23 (citing O.C.G.A. § 42-8-60(c)(1)). The Georgia Documents state defendant shall "stand discharged … and shall be completely exonerated of guilt," "[u]pon fulfillment of the terms and conditions of probation." Dkt. 35-1 at 3; Dkt. 35-2 at 5. The effective date of

---

[3] At the hearing and in a supplemental opposition brief, the government makes repeated references to the lack of expungement records. Dkt. 62 at 5-6. The First Offender Act makes no reference to records of expungement, as the government claims to require before a defendant may assert First Offender status. *Id.*

11

discharge and exoneration is satisfactorily defined as the date of completion of defendant's probation.

Accordingly, the government has failed to refute the applicability of the First Offender Act to defendant's prior felony charges. The Georgia Documents are, at best, ambiguous as to defendant's status as a convicted felon. *See United States v. Huping Zhou*, 678 F.3d 1110, 1115 (9th Cir. 2012) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.") (internal quotations and citations omitted). The government's affirmative assertion that defendant "is a convicted felon," without any qualifying language or reference to an equally plausible, if not likely, alternative conclusion, constitutes at the very least, a material omission, and perhaps even a materially misleading statement. Dkt. 39-1, Ex. C at 10.

Having so determined, the court considers whether the omission was made knowingly or intentionally, or with reckless disregard for the truth.

### B. Reckless Disregard

The government argues "the relevant facts and applicable law make clear that any such misstatement or omission was neither intentional nor reckless," because the affiant—an HSI Special Agent—took several steps to confirm defendant was a convicted felon before so swearing. Dkt. 62 ("Supp. Opp'n.") at 5. The HSI Special Agent attested that he spoke with a LAPD detective, who stated that "a law enforcement contact in Gwinnett County, Georgia had informed him defendant had been convicted of a felony"; "that LAPD had requested and received certified conviction documents from Gwinnett County, Georgia reflecting that defendant was a felon"[4]; that the state search warrant application for defendant's residence stated that a LAPD officer spoke with a Gwinnett County sheriff who verified defendant had two felony convictions; submitted multiple requests for information to the Gwinnett

---

[4] The agent testified at the hearing that he never saw those documents.

County Sherriff's Office Records custodian and the Gwinnett County clerk of court for records related to defendant's criminal history, none of which produced an expungement record; and that he consulted multiple times with the United States Attorney's Office and his co-case agent on those records. Dkt. 62-1, ¶¶ 5, 8-11.

The HSI Special Agent believed that the First Offender Language in the Georgia Documents "outlined what could have potentially happened in defendant's cases, but had not happened," and that the "Felony. Guilty as charged" and "Final Disposition: Negotiated Plea, Felony Sentence" language "controlled[] and reflected that defendant had been found guilty of the two felony charges." *Id.* ¶ 12. At the hearing, the HSI Agent testified that his understanding of the Georgia Documents was that the felony was certified as a conviction. The HSI Agent also conferred with the U.S. Attorney's Office and other agents, all of whom collectively decided the Georgia Documents reflected defendant had prior felony convictions.

To be clear, the HSI Special Agent was diligent and forthright in his efforts to secure supplemental information from Gwinnett County, discuss the matter with other local and federal law enforcement officers, and seek the legal advice of the United States Attorney's Office, and is not to be faulted for reaching an erroneous legal conclusion, especially where he is not educated or trained in the law. However, the government's collective decision to withhold the substance of the Georgia Documents and First Offender Language in those documents from the scope of the Magistrate Judge's review of the § 922(g)(1) Arrest Warrant was reckless. The government should have afforded the Magistrate Judge the opportunity to review and consider the substance of the Georgia Documents and First Offender Language and make an independent determination as to whether there was probable cause to believe defendant had been convicted of two felonies in Georgia.

As discussed in detail above, a review of the Georgia Documents and First Offender Act does not lead to the unambiguous conclusion that defendant was a convicted felon. The government incorrectly reached a contrary conclusion that the

13

First Offender Language did not control the Georgia Documents, and that defendant was clearly not entitled to First Offender status. Even assuming the government's misinterpretation of the statute was reasonable, however, where the face of a document (or other evidence) providing the basis for a material allegation in a warrant affidavit so plainly undermines, if not contradicts, the representations made to the Magistrate Judge in the affidavit, failure to disclose the full information cannot be characterized as anything less than reckless. *See United States v. Stanert*, 762 F.2d 775, 780-81 (9th Cir. 1985) ("Today, we expressly hold that the Fourth Amendment mandates that a defendant be permitted to challenge a warrant affidavit … when it contains deliberate or reckless omissions of fact that tend to mislead … By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw.").

The Georgia Documents state unequivocally that "no judgment of guilt [was] imposed," (Dkt. 35-1 at 3; Dkt. 35-2 at 5), and the government has failed to produce any evidence rebutting this unambiguous statement. The exclusion of the First Offender Language, the substance of the Georgia Documents, or any information explaining why the government believed the First Offender Act did not apply to defendant's guilty pleas, or inclusion of qualifying language as to defendant's *potential* status as a convicted felon, in the § 922(g)(1) Arrest Warrant affidavit constitutes a reckless disregard for the truth.[5]

///

///

---

[5] The government argues, assuming the § 922(g)(1) Arrest Warrant was deficient, that suppression of evidence is not an appropriate remedy because government agents "relied in good faith on the [§ 922(g)(1) Arrest Warrant] to arrest and search the defendant." Opp'n at 26; *see United States v. Leon*, 468 U.S. 897, 918 (1984). This argument fails as, under *Leon*, "suppression … remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that

**CONCLUSION**

Having considered the briefing, declarations, and exhibits submitted by the parties, the testimony presented at the February 23, 2024 evidentiary hearing, and for the foregoing reasons, the court GRANTS the Motion. All evidence resulting from defendant's arrest, including content obtained from his cellphone seized incident to his arrest and statements made by defendant in his post-arrest interview, is SUPPRESSED.

IT IS SO ORDERED.

Dated: February 27, 2024

FERNANDO L. AENLLE-ROCHA
United States District Judge

---

the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923 (citing *Franks*, 438 U.S. 154 (1978)).

15